**MERCANTILE TRUST COMPANY, Sole Trustee Under the Will of Lena Muckerman, Deceased, (Plaintiff) Appellant,**

v.

**Richard I. C. MUCKERMAN, (Defendant) Respondent-Cross-Appellant,**

and

**Jeanne Clare Imbs, a Minor, and Joseph F. Imbs, III, a Minor, (Defendants) Respondents-Cross-Appellants.**

No. 49596.

Supreme Court of Missouri,

Division No. 1.

April 13, 1964.

Thompson, Mitchell, Douglas & Neill, James M. Douglas, John O. Hichew, William G. Guerri, St. Louis, for appellant Mercantile Trust Co., sole trustee under will of Lena Muckerman, Decd.

Rassieur, Long & Yawitz, Elliott P. Koenig, Allen A. Yoder, and Roger R. Fagerberg, St. Louis, for respondent, Muckerman.

Guilfoil, Caruthers, Symington & Montrey, Rexford H. Caruthers, Gerhard J. Pet-

zall, St. Louis, for defendants-respondents, cross-appellants.

HOLMAN, Judge.

This case has recently come to the writer on reassignment. It is an action for a declaratory judgment by Mercantile Trust Company as sole successor trustee to the trust estate created by the last will of Lena Muckerman, deceased, in which it sought a construction of said will and particularly a determination as to the proper disposition to be made of the one-third share of the trust of which Richard C. Muckerman, deceased, had received the income during his life. Defendant, Dr. Richard I. C. Muckerman, contended that as the sole surviving child of Richard he was entitled to all of said share. The minor defendants, Jeanne Clare Imbs and Joseph F. Imbs, III, contended that, as the surviving children of Richard's daughter, Jeanne Imbs, deceased, they were entitled to one half of the share of the trust here involved. The trial court found that Dr. Muckerman was entitled to receive all of said trust assets. On the theory that the will was "clear, certain and definite," the court concluded that plaintiff's action in bringing this suit was "not proper" and plaintiff was therefore denied any allowance for attorney fees. An allowance of $7,500 out of the trust estate was made to the minor defendants as a reasonable fee for the services of their attorneys herein. All of the parties have appealed from the ensuing judgment. Their various contentions will be hereinafter stated and discussed. The value of the one-half share claimed by the minor defendants was $166,000 on February 15, 1961. We therefore have jurisdiction because of the amount in dispute.

The portion of the will relating to the trust is Article *Third* which reads as follows:

"All of the rest, residue and remainder of my property, real or personal, whatsoever and wheresoever, and by whatever title held, I give, bequeath and devise to my sons, Richard C. Muckerman and Louis Muckerman, hereinafter called Trustees, IN TRUST, for the uses and purposes and for final disposition as hereinafter provided:

"Trustees shall pay to my mother, Anna Marie Jucker, during her life, out of the net income of my trust estate, two hundred dollars ($200.00) per month, and should such payments be inadequate for her support and proper care in case of sickness or other unforeseen misfortune to her, I direct my Trustees to make such additional payments to her or for her use out of such income as they may deem necessary or desirable.

"Trustees shall pay the remainder of such net income to my said four children, Richard, Louis, Helen and Josephine, or the survivors of them in equal shares and in equal monthly or quarter-annual installments as Trustees may determine.

"Page 1 of Exhibit 'A'

"At the death of any one of my said four children (a) leaving descendants him or her surviving, the share of the net income which such child was receiving shall pass to and be expended by Trustees for the care, maintenance, support and benefit of such descendants until the youngest is twenty-one years of age when the trust as to such share shall terminate and the trust property shall pass in title absolute to such descendants, and (b) leaving no descendants him or her surviving, then the share of the net income which such child had been receiving shall pass to the then survivors of my said children. Provided, however, the surviving children of any deceased child of mine, anything herein to the contrary notwithstanding, shall take the same part or share of income and at the same dates that such deceased child of mine would have received such income if living,

and any share passing hereunder at any time to such surviving children shall continue in trust until the youngest survivor of them is twenty-one years old or until they all die before that time when the trust as to their share shall terminate and the share shall pass (1) to them, if living, in title absolute; (2) otherwise to my then surviving children, if any, with this trust continuing thereover during their lives; and (3) otherwise to my heirs at law in title absolute.

"If the last survivor of my said four children should die leaving no child him or her surviving, and leaving no children of any previously deceased child of mine him or her surviving, then at his or her death the trust shall terminate and the trust property shall pass in title absolute to my heirs at law.

"The term 'descendants' as used herein shall be deemed to refer to and include only the children of a deceased child of mine. * * *"

Lena Muckerman was the second wife of Ignatius M. Muckerman. To his first marriage were born two children—Helen, who is now married to Warren Beckwith, and Richard C. Muckerman, whose death on March 15, 1959, has brought about the institution of this suit. Richard C. had two children—Dr. Richard I. C. Muckerman, a defendant herein, and Jeanne Clare Imbs who was killed in an automobile accident March 2, 1955. As heretofore stated, she was survived by a son, Joseph F. Imbs, III, and a daughter, Jeanne Clare Imbs, both of whom are now minors and are represented in this action by their father, Joseph F. Imbs, II, who was appointed their guardian ad litem. To the marriage of Lena and Ignatius were born two children—a daughter, now Josephine M. Judkins, and a son Louis who died March 24, 1932, leaving a daughter named Diana. Lena's mother, Anna Marie Jucker, died many years ago and the allowance to her

out of the trust estate is no longer of any consequence.

The family history and the situation existing at the time testatrix made her will is shown by the deposition testimony of Helen M. Beckwith and Josephine M. Judkins (both of whom now live in California) which was offered by the minor defendants. Helen M. Beckwith testified that she married Russell T. Eggers in 1922 and that a son, William, was born of this marriage in 1926; that her father was Ignatius Muckerman and her stepmother was testatrix; that she was very young when Lena married her father and she lived in that family until she married; that all four children lived with Lena and Ignatius as a family and Lena treated all of the children as if they were her own and referred to all of them as her children. She stated that Ignatius died in 1921; that Lena became ill with cancer and entered the hospital in early January 1930 and died March 4, 1930, at the age of 53 (it was admitted in the pleadings that Lena died February 4, 1930); that at the time of her death Lena had three grandchildren—William Eggers who was about four years of age, defendant Richard I. C. Muckerman who was eight years of age, and Jeanne Muckerman who was six years of age. Mrs. Beckwith further testified that her former husband, Russell Eggers, had been married before and had two children, Carter and Mary Jane, by that marriage but that those two children had lived with Eggers' former wife; that Lena and Ignatius were of the Catholic faith and that she had been raised a Catholic; that Eggers was a Protestant; that Lena knew of the two children born of Eggers' first marriage but they never visited in her home; that she was not divorced from Russell Eggers until after Lena's death. She stated that Lena was fond of Richard and Jeanne Muckerman and they often visited in her home; that the Muckerman family would have family gatherings at either the home of Lena or Richard at Christmas, Thanksgiving, and on other special occasions.

Josephine M. Judkins testified that she was 16 at the time of Lena's death; that she was a child of Lena and Ignatius; that Lena displayed equal love for her children and stepchildren, all of whom lived together in her home; that Lena displayed normal affection for her grandchildren, Richard and Jeanne Muckerman. She stated that Lena disapproved of the marriage between Helen Muckerman and Russell Eggers because Eggers was divorced and also "his reputation", but that she later became reconciled to the marriage and accepted their child William as a grandson; that at the time of her death Lena's only relatives were her mother and her children and grandchildren.

Before stating the contentions of the parties and considering the merits of the controversy it would perhaps be helpful to endeavor to analyze the trust provisions. It is clear that the net income is to be paid to the children of testatrix in equal shares during their lifetimes. If a child die leaving descendants the income shall be paid to his descendants until the youngest is 21 years of age when the trust shall terminate as to such trust share and the trust property shall be delivered to such descendants. However, the word "descendants" is thereafter stated to refer only to "children of a deceased child of mine." It is then provided that if any child die without leaving descendants the income which he has been receiving shall "pass to" testatrix' other surviving children. Next is an extensive proviso. (It will be noted that the word "descendants" does not appear in the remainder of the trust provision.) The proviso is to some extent a restatement of prior provisions. It states that the surviving children of a "deceased child of mine" shall receive the same share of income that the deceased child would have received if living and that the share shall continue in trust until the youngest survivor shall become 21 years of age, or until they all die before that time, at which time the trust shall terminate as to such share and the shares shall pass (1) to such survivors if living, (2) otherwise to the surviving children of testatrix with the trust continuing during their lives, and (3) otherwise to the heirs at law of testatrix in title absolute. The next paragraph provides that if the last survivor of the four children of testatrix shall die leaving no children surviving, and if there are no surviving children of the other deceased children of testatrix, then the trust shall terminate and the trust property shall pass to her heirs at law.

■■■ As heretofore indicated, the question for decision is whether Dr. Muckerman as the only surviving child of Richard, deceased, should receive the entire trust share here involved or whether the children of Dr. Muckerman's deceased sister should receive one half thereof.

In the construction of wills our primary duty is to determine "the true intent and meaning of the testator." Section 474.430, RSMo 1959, V.A.M.S. "All technical rules of construction are subservient to the paramount rule that the intention of the testator shall control unless it violates some established rule of law. Legg v. Wagner, Mo. Sup., 155 S.W.2d 146. In performing our task we must consider the will as a whole and not give undue preference to any particular clause. 'When the intent of the testator is found, the proper construction of the will is solved.' McMillan v. Barnard Free Skin & Cancer Hospital, 304 Mo. 635, 264 S.W. 410, 413. Moreover, we are mindful that 'The infinite variety of expressions and the differing shades of meaning so often attached to identical words or phrases when employed by the makers of wills in a context and under circumstances peculiar to the context of the will of each testator and the circumstances under which it was written make prior decisions construing similar words or phrases of far less value as precedent than those of other fields of litigated controversies.' Hereford v. Unknown Heirs, etc., 365 Mo. 1048, 292 S.W.2d 289, 293." Commerce Trust Company v. Weed, Mo.Sup., 318 S.W.2d 289, 294. We must also bear in mind that it is the function

of a court to construe the will and not to write a new will for the testator under the guise of construction.

Much of the material in the briefs relate to the following provision in the will: "The term 'descendants' as used herein shall be deemed to refer to and include only the children of a deceased child of mine." Dr. Muckerman contends that when the will is considered as a whole, and the quoted definitional sentence given effect, it is not ambiguous but clearly states the intent of the testatrix to the effect that upon the death of one of her children his share of the trust assets shall go to his child or children only. On the other hand, the minor defendants contend that the will is ambiguous and that when it is considered in connection with the surrounding circumstances the court should conclude that the purpose of the definitional clause was not to limit "descendants" to children of testatrix' children but to exclude the stepchildren of Helen (Eggers) Beckwith and other collaterals, as well as insuring a per stirpes distribution of the trust assets.

We have carefully considered the entire will and have concluded that testatrix intended (except for provisions for distribution to her heirs at law upon failure of other takers) to limit the beneficiaries of her trust to her children and grandchildren. However, we hasten to add that we have found the question presented to be a difficult one to decide and hence we do not agree with the conclusion of the trial court that the provisions "are clear, certain, definite and admit of no doubt * * *."

In our consideration of the contentions of the minor defendants we note at the outset that testatrix has not always used words in her will in accordance with their exact meaning. For example, throughout the will she refers to the four children as "my children" when, as a matter of fact, two of them were her stepchildren. Also, the paragraph which provides for the disposition of the trust upon the death of one of testatrix' children refers only to descendants in the portion preceding the proviso. "Descendant" has been defined as "one who is descended from another; a person who proceeds from the body of another, such as a child, grandchild, etc., to the remotest degree." Black's Law Dictionary, Fourth Ed. If that portion of the will were considered alone there would be no question but that Jeanne's children would be beneficiaries. However, as heretofore stated, at the end of the trust-creating portion of the will there appears the sentence which purports to define "descendants" in a manner much different from its usual meaning. It is difficult for us to understand why a skilled draftsman would describe the beneficiaries in that manner. If the definitional clause is given effect it would appear that wherever the word "descendants" appears the word "children" was actually intended. If so, why wasn't the word "children" used instead of descendants? Why use the wrong word and then at the end say that that word shall be deemed to mean something entirely different?

In view of the foregoing we were at first inclined to believe that the definitional sentence was placed in the will for some other reason and that it was not intended that it should limit the beneficiaries to those no more remote than the grandchildren of testatrix. Nothing in the will or in the testimony indicates any reason why testatrix would have wanted to exclude her great grandchildren from the benefits of her trust. Moreover, since testatrix always regarded her stepchildren as though they were her children, it is reasonable to assume that she may have thought Helen's stepchildren would be regarded as her (Helen's) children, and she may have erroneously considered that the definitional clause was necessary in order to exclude them from the class of trust beneficiaries. We are also mindful of the rule that "[w]hile it is true in a strict grammatical sense that the term 'children' does not necessarily include others than the immediate offspring of the testator, yet it may acquire contextually a broader meaning and include grandchildren,

if such was the evident intent of the will-maker as ascertained from a consideration of the conditions and circumstances of the execution of the instrument and the motive and purpose expressed in its language." Peak v. Peak, Mo.Sup., 195 S.W. 993, 994. As indicated, however, the word "children," as used in a will, "is usually given its primary meaning of legitimate offspring of the first degree, and does not include more descendants, unless there is something in the context of the will which manifests an intention on the part of the testator, to give it a more extensive meaning." St. Louis Union Trust Co. v. Kelley, 355 Mo. 924, 199 S.W.2d 344, 349.

While, as stated, we tentatively had considerable doubt concerning the effect to be given the definitional sentence, that doubt has been dispelled by a careful analysis of that part of Article Third beginning with the proviso. In that portion of the will there are many references to the surviving *children* of testatrix' deceased children and when such references are considered in connection with the definitional sentence we do not think it can reasonably be said that any progeny more remote than testatrix' grandchildren were intended to be included as specific beneficiaries. It is therein provided that upon termination of the trust as to the share of any of her children said share shall pass to his surviving children, if any, otherwise (in trust) to testatrix' children that are still living. If her last surviving child die without any children surviving, apparently that share would go to the surviving children of previously deceased children of testatrix, if any, otherwise to the heirs at law of testatrix.

If testatrix had intended that the share of her deceased children go to the lineal descendants of said child, surely, in making the detailed provisions beginning with the proviso which we have heretofore discussed, she would have said something to specifically indicate that intent. As stated, we do not see any reason why she desired to exclude her great grandchildren, but that is not a matter for us to determine. It

was her property to do with as she chose, and whether she had a good reason for the provisions of her will is not for the courts to decide.

A somewhat similar situation existed in the case of Grenzebach v. Grenzebach, 315 Mo. 392, 286 S.W. 79. There the testator's will provided for a life estate in his wife, and upon the decease or second marriage of his wife it was to go to such of his lawful children as should be living at that time, to be divided in equal parts. It was held that the children of deceased children of testator were excluded.

In view of what we have heretofore said, we see no reason for extending this opinion by discussing the suggestion that the definitional sentence was inserted in the will for the sole purpose of insuring that the shares be distributed per stirpes. We consider it to be without merit.

As heretofore indicated, we rule that the portion of the judgment to the effect that Dr. Richard I. C. Muckerman shall receive the trusts assets here involved, after payment of expenses, should be affirmed.

■ Plaintiff has appealed from that part of the judgment in which the court refused to make an allowance out of the trust estate for counsel fees and in which the court costs were assessed against it. We are clearly of the opinion that the will was sufficiently ambiguous to warrant the trustee in bringing this declaratory judgment action in order to settle the controversy. In that situation plaintiff trustee is entitled to a reasonable allowance out of the trust estate for counsel fees. City of St. Louis v. McAllister, 302 Mo. 152, 257 S.W. 425; Kingston v. St. Louis Union Trust Co., 348 Mo. 448, 154 S.W.2d 39.

■ We are asked to allow plaintiff a reasonable fee for the work of its attorneys in this matter, including the services rendered on this appeal. One of plaintiff's attorneys testified at the trial that counsel had spent 538 hours in working on the case

and he expressed the opinion that a fee of $10,000 would be reasonable for those services. We are reasonably familiar with the value of the services rendered upon the appeal. We have concluded that a reasonable allowance to plaintiff for all counsel fees in this matter would be $12,500. The court costs should, of course, be ordered paid out of the trust estate.

■ Dr. Muckerman has appealed from the allowance of counsel fees in the sum of $7,500 to the minor defendants. In that connection, said defendants here complain that the allowance for services in the trial court was not sufficient and they request that we make a de novo allowance of a reasonable attorney fee which will include services in the trial court and on appeal. On the last day of the trial one of their attorneys testified that counsel had spent 325 hours working on the case until that time. They have carefully and vigorously presented the matter in this court. We have concluded that the work of counsel for the minor defendants has been of considerable assistance to the trustee and to the court in bringing about a determination of the dispute over the devolution of the trust assets here involved. A part of those services involved a trip by counsel to California in order to take the depositions of Helen Beckwith and Josephine Judkins. We are therefore of the opinion that the trial court did not err in making a reasonable allowance for the counsel fees of said defendants. Bernheimer v. First Nat. Bank of Kansas City, 359 Mo. 1119, 225 S.W.2d 745; Garrison v. Garrison, 354 Mo. 62, 188 S.W.2d 644; Nelson v. Mercantile Trust Company, Mo.Sup., 335 S.W.2d 167; Lang v. Taussig, Mo.App., 194 S.W.2d 743; Trautz v. Lemp, 334 Mo. 1085, 72 S.W.2d 104 [1]. We affirm the allowance of $7,500 for services rendered prior to the appeal. It is our view that an additional allowance of $2,500 should be made for briefing and arguing the case here.

The judgment relating to the construction of the will and a partial allowance for counsel fees is affirmed. In other respects the judgment is reversed and cause remanded with directions to enter further orders and judgments in regard to allowances for attorney fees and the assessment of court costs in accordance with the views herein expressed.

All concur.