

# In the Missouri Court of Appeals
# Eastern District

## DIVISION III

| | | |
|---|---|---|
| MARY L. LEHMANN, et al., | ) | No. ED99782 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Philip Heagney |
| BANK OF AMERICA, N.A., d/b/a | ) | |
| U.S. TRUST, | ) | |
| | ) | |
| Appellant. | ) | FILED:  April 15, 2014 |

### Introduction

Bank of America, N.A. ("Bank") appeals from the judgment of the probate division of the Circuit Court of St. Louis City ("probate court") granting summary judgment in favor of Respondents Mary L. Lehmann, Kenneth L. Lehmann, and Frederick W. Lehmann, IV ("Respondents").  Respondents sought the removal of Bank as corporate trustee of a trust executed by Frederick W. Lehmann, III ("the Settlor") in favor of Respondents.  Bank alleged that its removal as corporate trustee triggered the payment of a distribution fee set forth in the applicable fee schedule.  The probate court granted summary judgment in favor of Respondents, finding that Bank was not entitled to the distribution fee provided in the fee schedule or any other additional compensation upon its removal as corporate trustee.  On appeal, Bank asserts that the probate court erred in granting summary judgment in favor of Respondents because: (1)

1

it was the clear and controlling intent of the Settlor that Bank receive the distribution fee set forth in the fee schedule; and (2) whether Bank was entitled to additional, reasonable compensation pursuant to Section 456.7-708[1] was a factual issue inappropriate for resolution on summary judgment. Bank also appeals the probate court's denial of its request for attorneys' fees. We affirm in part and reverse and remand in part.

Factual and Procedural History

On July 17, 1967, the Settlor established an inter vivos trust ("the Trust") and named Boatmen's National Bank of St. Louis ("Boatmen's Bank") as trustee. Bank is the corporate successor in interest to Boatmen's Bank and is currently serving as corporate trustee of the Trust. In addition to the corporate trustee, the Settlor designated himself and Mary L. Lehmann as individual trustees. The Settlor died on February 21, 2001. On March 28, 2008, Mary L. Lehmann resigned as trustee and appointed Frederick W. Lehmann, IV as her successor. Frederick W. Lehmann, IV currently serves as individual trustee of the Trust.

Mary L. Lehmann is the sole income beneficiary of the Trust for the duration of her life. The Trust provides that upon Mary L. Lehmann's death, the Trust principal is to be divided into equal shares for the sons of the Settlor, Frederick W. Lehmann, IV and Kennett L. Lehmann, and their shares transferred free of trust to them.

Article V of the Trust provides that the corporate trustee be compensated for its services as trustee in accordance with its published schedule of fees in effect on the date the Trust was created. The parties agree that the applicable schedule of fees is Boatmen's Bank's Schedule of Fees for Services Rendered under Personal Trusts and Agencies published on October 1, 1955 (the "Schedule of Fees"). Schedule II of the Schedule of Fees sets forth two different fees to be

---

[1] All statutory references are to RSMo Cum. Supp. 2012.

2

charged for the administration of personal trusts: an annual fee, which is charged to income, and a distribution fee, which is charged to principal. Since the creation of the Trust in 1967, Bank and its corporate predecessors have charged fees in accordance with the Schedule of Fees.

In 2004, the General Assembly enacted Sections 456.1–101 to 456.11–1106, effective January 1, 2005. Section 456.7–706 provides for the removal of a trustee in differing circumstances. Relevant to this appeal is Section 456.7–706.2(4), which provides for the removal of a trustee upon request by the qualified beneficiaries without any showing of wrongdoing by the trustee. This mechanism for removing a trustee did not exist prior to the legislative enactment in 2004.

On April 30, 2012, Respondents filed a Petition for Trustee Removal and Declaratory Relief ("Respondents' Petition") seeking a "no fault" removal of Bank as corporate trustee of the Trust under Section 456.7-706.2(4) and the appointment of The Bank of Missouri as successor corporate trustee. Respondents also sought an order declaring that Bank was not entitled to a distribution fee or any other compensation as a result of its removal as corporate trustee. Acknowledging the rights conferred to the beneficiaries under Section 456.7-706, Bank did not contest Respondent's request for its no-fault removal as trustee. However, in its Answer to Respondents' Petition, Bank asked the court to advise and instruct on whether Bank was entitled to the distribution fee set forth in the Schedule of Fees upon its removal as corporate trustee and distribution of the Trust assets to The Bank of Missouri. In the event the probate court determined Bank was not entitled to the distribution fee, Bank alternatively sought an equitable determination as to whether its compensation would be unreasonably low so as to entitle it to additional compensation for its services under Section 456.7-708(2).

On July 17, 2012, Bank served discovery requests on Respondents seeking, *inter alia*, information on the proposed successor corporate trustee's fees for administration of the Trust. In response to Bank's discovery requests, Respondents moved for a protective order arguing that the discovery served no purpose because no factual issues were in dispute and the sole determination to be made by the probate court was a legal one – namely, whether Bank was entitled to the distribution fee set forth in Schedule of Fees. Thereafter, the parties agreed to suspend discovery relating to Bank's ancillary claim that, in the absence of the distribution fee, its compensation would be unreasonably low. Discovery on this issue ceased pending the probate court's determination of Bank's entitlement to the distribution fee as a result of the transfer of the trust assets to the successor corporate trustee.

The parties prepared a joint stipulation of facts so that the following issues could be resolved on summary judgment: (1) whether Bank is entitled to the distribution fee set forth in the Schedule of Fees when the transfer of trust assets is to a successor corporate trustee; and (2) whether a court may adjust a trustee's compensation under Section 456.7-708 when the trustee's fee is specified in the trust.

The parties filed cross-motions for partial summary judgment on November 20, 2012. On February 19, 2013, the probate court entered its judgment and order granting Respondents' motion for summary judgment and denying Bank's motion for summary judgment. The probate court found that neither the Trust instrument nor the Schedule of Fees contemplated the no-fault resignation of the corporate trustee and the corresponding transfer of assets to a successor corporate trustee. Accordingly, the probate court looked to the plain meaning of the word "distribution" and found that the term generally designates the delivery of trust assets to the proper beneficiaries at the termination of a trust. Applying this meaning of the word

4

"distribution," the probate court concluded that the distribution fee set forth in the Schedule of Fees would be paid only when the Trust assets are distributed to the beneficiaries at the termination of the Trust. The probate court ruled that because the transfer of the Trust assets from Bank to a successor corporate trustee was not a distribution of assets to the beneficiaries, Bank was not entitled to the distribution fee set forth in the Schedule of Fees. The probate court also concluded that the joint stipulation of facts provided no basis to award Bank any additional fees outside the Schedule of Fees.

Following the probate court's order granting Respondent's motion for partial summary judgment, both parties petitioned for an award of attorneys' fees. On April 29, 2013, the probate court entered its final judgment and order removing Bank as corporate trustee, appointing The Bank of Missouri as successor corporate trustee, and denying both parties' motions for attorneys' fees. This appeal follows.

Points on Appeal

Bank raises three points on appeal. First, Bank asserts that the probate court erred in granting Respondent's motion for partial summary judgment because both the terms of the Trust and the law applicable at the time of the Trust's creation show that the Settlor intended for Bank to receive the distribution fee set forth in the Schedule of Fees upon the completion of its duties as corporate trustee. Bank next contends that the probate court erred in granting Respondent's motion for partial summary judgment on Bank's alternative equitable fee claim. Specifically, Bank posits that the issue of the reasonableness of Bank's compensation absent payment of the distribution fee was not ripe for adjudication on summary judgment. Finally, Bank argues that the probate court erred in denying Bank's motion for attorneys' fees and costs.

Summary judgment allows a trial court to enter judgment for the moving party where the party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine dispute. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). On appeal, our review is essentially *de novo*; we need not defer to the trial court's order. Id. We view the record in the light most favorable to the party against whom judgment was entered. Id. We will affirm the judgment where the trial court reached the correct result, even if for the wrong reason. Carman v. Wieland, 406 S.W.3d 70, 73 (Mo. App. E.D. 2013).

We review the denial of a request for attorneys' fees for an abuse of discretion. Green v. Plaza in Clayton Condominium Ass'n., 410 S.W.3d 272, 281 (Mo. App. E.D. 2013). "To demonstrate an abuse of discretion the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." Id. (quoting Howard v. City of Kansas City, 332 S.W.3d 772, 792 (Mo. banc 2011) (internal quotations omitted)). On appeal of a denial of attorneys' fees, we view the evidence with great deference toward the trial court. Id.

## Discussion

**I.     Bank is not entitled to the distribution fee set forth in the Schedule of Fees.**

The probate court granted Respondents' motion for partial summary judgment on the basis that the distribution fee set forth in the Schedule of Fees may be charged only upon the termination of the Trust and distribution of the Trust assets to the beneficiaries. The probate court reasoned that, under Missouri case law, the word "distribution" is used to designate the delivery of assets free from trust to beneficiaries at the termination of a trust, citing Mercantile

Trust Co. Nat'l Assn. v. Jaeger, 457 S.W. 2d 272, 731 (Mo. Banc. 1970). Because the Trust instrument contained no language providing for compensation to the trustee upon the transfer of trust assets to a successor corporate trustee, the probate court concluded that the distribution fee could be charged only at the time the Trust was terminated and the assets were distributed free from trust to the beneficiaries.

Bank argues that the probate court's holding erroneously ignored the clear intent of the Settlor to fully compensate Bank by deferring the bulk of its compensation until the conclusion of Bank's services as corporate trustee. Bank notes that at the time the Settlor created the Trust in 1967, the applicable law did not allow for its removal as trustee without cause. Only upon the enactment of Section 456.7-706 in 2004 was it legally possible for a "no-fault" removal of Bank as trustee. Because no legal mechanism existed to remove Bank as trustee without cause when the Trust was created, Bank reasons that the Settlor could have had no intent other than for Bank to remain the corporate trustee until the termination of the Trust. Consistent with that intent, Bank further argues that the Settlor logically intended for Bank to earn the distribution fee upon the conclusion of its services. Bank reasons that the distribution fee is, in reality, deferred compensation for services Bank has rendered to the Trust since its appointment as trustee in 1967. Bank argues that this type of compensation structure was recognized by the Missouri Supreme Court in Mercantile Trust Company National Association. Bank further suggests that the provisions of Schedule II of the Trust, which either reduce or eliminate the payment of the distribution fee upon the occurrence of certain events, support its characterization of the distribution fee as deferred income and is proof of the Settlor's intent that the distribution fee be paid to Bank upon completion of its services as trustee. Bank maintains that the Settlor necessarily understood the meaning of the term "distribution" as used in the Trust to be broader

than the distribution of Trust assets at the termination of the Trust, and necessarily included any distribution of the Trust assets.

In In re Gene Wild Insurance Trust, the Southern District aptly summarized the rules to be used when construing a trust:

> Ultimately, the paramount rule in construing a trust is that the intent of the grantor is supreme. This intent must be gleaned, if possible, from the trust instrument as a whole. In examining the entirety of the trust agreement at issue, no single word or clause is given undue preference. Rather, we must give meaning to the trust in its entirety and adopt a construction of its terms that reconciles, rather than creates, inconsistencies. Furthermore, where the language is clear and of well-defined force and meaning, it must stand as written, . . . and a testator is presumed to know and intend the legal effect of the language he [or she] uses. Unless the context of a will or trust indicates a different meaning of a word, the word will be interpreted according to its plain, ordinary meaning. Finally, if the language of the trust is clear, there is no need to engage the rules of construction, as we cannot rewrite the terms of the trust using such rules.

In re Gene Wild Ins. Trust, 340 S.W.3d 139, 143 (Mo. App. S.D. 2011) (internal quotations and citations omitted).

These clear statements of law guide our resolution of the issue before us. The Trust provides for compensation of Bank for its services as corporate trustee in accordance with the Schedule of Fees. It is not disputed that the Trust expresses the Settlor's clear intent that Bank be paid in accordance with the Schedule of Fees. Accordingly, to determine the Settlor's intent with respect to whether Bank is entitled to the distribution fee, we must look to the Schedule of Fees prepared by Bank and incorporated into the Trust by the Settlor.

As noted by the probate court, the Schedule of Fees constitutes a contract for fees to be paid for services performed by Bank and its predecessors on behalf of the Trust. The cardinal principle for contract interpretation is to ascertain the intention of the parties from the contract itself and to give effect to that intent. Butler v. Mitchell-Hugeback, Inc., 895 S.W.2d 15, 21 (Mo. banc 1995). When interpreting a contract, we must use the plain, ordinary, and usual

8

meaning of the contract's words and consider the document as a whole. State ex rel. Missouri Highway & Transp. Comm'n v. Maryville Land P'ship, 62 S.W.3d 485, 491 (Mo. App. E.D. 2001). Each term and clause is construed to avoid an effect that renders other terms and provisions meaningless. Id. at 492. "A construction attributing a reasonable meaning to each phrase and clause, and harmonizing all provisions of the agreement is preferred to one that leaves some of the provisions without function or sense." Id.

We have carefully reviewed the Schedule of Fees in its entirety. Applying the plain meaning of the words used in the Schedule of Fees, we reject Bank's argument and hold that the language used in the Schedule of Fees clearly expresses the parties' intent for the corporate trustee to be paid when the Trust assets are distributed free from trust at the time the Trust is terminated. In reaching this conclusion, we consider the Schedule of Fees as a whole, rather than viewing any schedule in isolation. However, because Schedule II applies to personal trusts of the type created by the Settlor, we begin our analysis there.

Schedule II simply provides for the payment of a distribution fee in the amount of 3% on the first $100,000 of Principal and 1½ % on the balance of the Principal. The term "distribution fee" is not further defined in Schedule II except to state that the distribution fee shall be charged to Principal. Schedule II ties the payment of the distribution fee to termination of a trust under provisions that (1) reduce the payment of the distribution fee *should the Trust terminate within five years of its creation*, and (2) eliminate the requirement to pay a distribution fee to the trustee *if the Trust is terminated, in whole or in part, by the grantor during his lifetime*. Each of these provisions plainly intertwines the payment of the distribution fee provided to the corporate trustee of a personal trust to the termination of the trust and corresponding distribution of the principal. We find no language within Schedule II that articulates a concept separating the

9

payment of the distribution fee from the termination of the Trust and distribution of the principal. We find the association of these concepts within Schedule II compelling evidence that the Settlor intended the payment of the distribution fee upon termination of the Trust and distribution of the Trust assets free of trust.

Bank contends these same provisions indicate the intent of the Settlor and Bank to establish the distribution fee as "deferred compensation," which Bank earned during its years of service as corporate trustee and is now entitled to receive upon termination of "its services." We are not persuaded. The Schedule of Fees describes neither the nature nor purpose of the distribution fee; it states only the amount. To adopt Bank's reasoning, we must add words to the Schedule of Fees, words not expressed by either the Settlor or Bank. This we will not do. The Schedule of Fees does not define the distribution fee as deferred compensation. Moreover, such interpretation is inconsistent with the provision eliminating the distribution fee upon termination of the Trust by the Grantor within his lifetime. This provision eliminates the distribution fee if the Grantor terminates the Trust regardless of what services were provided by the corporate trustee during the Grantor's life - here a period exceeding 33 years. We will not speculate as to what the Settlor and Bank may have intended as to the distribution fee under the circumstances presented. Instead we are guided by the plain meaning of the words used as we review the Schedule of Fees as a whole.

In our attempt to ascertain the Settlor's intent, we next look to Schedule III of the Schedule of Fees. Schedule III applies to perpetual trusts and thus does not govern Bank's compensation for administration of the Trust before us. Nonetheless, we consider Schedule III as part of our review of the Schedule of Fees as a whole for guidance regarding the term "distribution fee." Similar to Schedule II, Schedule III also provides for the payment of an

10

annual fee and a distribution fee. Schedule III states that the distribution fee is "[a]pplicable to any part of the principal ***distributed or paid out free from trust*** in accordance with the terms of the trust." Although Schedule III does not govern Bank's compensation under Schedule II, our guiding principles of contract interpretation require us to harmonize all provisions of the Schedule of Fees so as not to leave any phrase or clause without meaning. See CB Commercial Real Estate Grp., Inc. v. Equity P'ships Corp., 917 S.W.2d 641, 646-47 (Mo. App. W.D. 1996). Applying the same meaning for distribution fee in Schedules II and III achieves this harmony and allows for a "reasonable and natural construction of [the parties'] agreement." Id. at 647.

We have carefully considered Bank's argument that, in light of the state of the law at the time the Trust was created, the Settlor would have understood that Bank would serve as corporate trustee until the termination of the Trust, and therefore must have intended for Bank to receive the distribution fee set forth in the Schedule of Fees when its services as corporate trustee were completed. Although we acknowledge that the Settlor likely never contemplated Bank's no-fault removal as corporate trustee, we are nonetheless constrained to ascertain the intention of the parties with respect to Bank's compensation from the express language of their agreement. The objective meaning of the language used in the Schedule of Fees is our guidepost, not the subjective thoughts of what the parties may have intended had they contemplated the change of law. Where a contract is clear and unambiguous, a reviewing court cannot go outside the agreement and make a new contract for the parties. Grantham v. Rockhurst Univ., 563 S.W.2d 147, 150 (Mo. App. W.D. 1978).

We find that the Schedule of Fees is clear and unambiguous as to the meaning of "distribution fee." Further, the language of the Trust clearly demonstrates the Settlor's intent to adopt the Schedule of Fees as the payment obligations of the Trust to Bank. The subsequent

11

enactment of Section 456.7-706 did not alter the intent expressed by the parties when the Trust was created. Because Bank is not distributing the Trust assets free of trust at its termination, Bank is not entitled to the distribution fee set forth in the Schedule of Fees agreed to by the Settlor and Bank. Whether we believe the Trust has obtained an unforeseen benefit as a result of the statutory change in 2004 is not relevant to our holding. As noted previously by this Court, "[w]e must adhere to the clear language contained in the trust instruments and not alter our position because of the result that occurs." Boatmen's Trust Co. v. Sugden, 827 S.W.2d 249, 254 (Mo. App. E.D. 1992). Point denied.

## II. Genuine issues of fact exist as to whether Bank is entitled to additional compensation pursuant to Section 456.7-708(2).

In its second point on appeal, Bank asserts that the probate court erred in granting Respondents' motion for partial summary judgment on the ground that Bank is not entitled to any additional fees in the absence of a distribution fee. Bank contends that whether it was entitled to additional compensation pursuant to Section 456.7-708 requires consideration of facts not included in the record on summary judgment. Because discovery on facts relevant to the reasonableness of Bank's compensation had been expressly reserved pending the probate court's determination regarding the distribution fee, Bank contends summary judgment on this issue was inappropriate. We agree.

Section 456.7-708 provides, in relevant part:

2. If the terms of a trust specify the trustee's compensation, the trustee is entitled to be compensated as specified, *but the court may allow more or less compensation if*:

> (1) the duties of the trustee are substantially different from those contemplated when the trust was created; or

> (2) *the compensation specified by the terms of the trust would be unreasonably low or high*.

12

3. For purposes of this section, reasonable compensation may include fees that take into account the administration of both income and principal whether or not the will or trust instrument contains provisions relating to compensation of the trustee.

(emphasis added). Missouri courts generally deny trustees additional compensation where the trust instrument specifies the trustee's compensation, see, e.g., Estate of Ingram v. Ashcroft, 709 S.W.2d 956, 958 (Mo. App.W.D. 1986). However, Section 456.7-708 modifies the common law rule to allow a trustee additional compensation "if . . . the compensation specified by the terms of the trust would be unreasonably low." Section 456.7-708.2(2).

The record before us shows that the parties agreed to bifurcate the issues advocated by the Bank in support of its claim for a fee upon its no fault removal as trustee. The parties suspended discovery on Bank's claim that its fee would be unreasonably low in the absence of a distribution fee, allowing the probate court to first determine whether Bank was going to receive the distribution fee. This bifurcation of issues logically promoted judicial economy by narrowing the scope of the summary judgment motions. The bifurcation also served the interest of minimizing the financial burden to all parties involved in the litigation.

Consistent with the bifurcation of issues, the joint stipulation of facts submitted by the parties on summary judgment did not include any facts relating to the issue of the reasonableness of Bank's compensation. Summary judgment may only be granted when there is no genuine dispute as to the facts and the facts as admitted show a legal right to judgment for the movant. ITT Commercial Fin. Corp., 854 S.W.2d at 380. Because no facts were presented to the probate court on the reasonableness of Bank's compensation, the probate court acted prematurely in considering the issue of Bank's entitlement to additional fees once it determined Bank would receive no distribution fee.

13

In light of our holding that Bank is not entitled to the distribution fee set forth in the Schedule of Fees, a genuine issue of fact exists as to whether the annual fee alone provides Bank reasonable compensation for its services as corporate trustee of the Trust for forty-five years. The record reveals that discovery on the issue of the reasonableness of the fees paid to Bank in light of Section 456.7-708 remains. Bank is entitled to develop evidence relating to this issue through discovery prior to the probate court's consideration of summary judgment. Adams v. USAA Cas. Ins. Co., 317 S.W.3d 66, 75 (Mo. App. E.D. 2010). We reverse the probate court's judgment with respect to the issue of adjusting Bank's compensation pursuant to Section 456.7-708 and remand for discovery on the issue of the reasonableness of Bank's fee. Point granted.

### III.    The probate court did not abuse its discretion in denying Bank's request for attorneys' fees.

In its third and final point on appeal, Bank argues that the probate court erred in denying its request for costs and expenses, including reasonable attorneys' fees, pursuant to Section 456.10-1004.

Section 456.10-1004 provides that, "[i]n a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy."

Section 456.10-1004 is a discretionary statute. The statute provides that a court "*may* award costs and expenses, including reasonable attorney's fees." Section 456.10-1004. Thus, this statute is permissive and not mandatory. Because Section 456.10-1004 grants the trial court authority to award attorneys' fees, but does not mandate an award, the probate court has discretion to either award or deny the request for attorneys' fees. We are not persuaded that the probate court's denial of Bank's request for attorney fees was against the logic of the

14

circumstances and "so arbitrary and unreasonable as to shock one's sense of justice." <u>Green</u>, 410 S.W.3d at 281. Based on the record before us, we hold that the probate court did not abuse its discretion in denying Bank's request for attorneys' fees. Point denied.

## Conclusion

We affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

Kurt S. Odenwald, Judge

Mary K. Hoff, P.J., Concurs
Angela T. Quigless J., Concurs